UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| STEVIE KLINE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:24-cv-01420-SRC |
| | ) | |
| CANAM STEEL CORPORATION et al., | ) | |
| | ) | |
| Defendants. | ) | |

**Memorandum and Order**

In 2017, Missouri enacted a new law providing exclusive remedies for claims for damages or injury arising out of an employment relationship. The Missouri appellate courts have not had occasion to determine the scope and contours of that law. This case presents novel questions of interpretation of that law, particularly as to the allegedly fraudulently joined defendant. That presence of that defendant destroys diversity, and this Court accordingly lacks subject-matter jurisdiction. The Court remands the case to state court to wrestle with the novel issues of state law at hand.

**I.      Background**

     **A.      Factual background**

In her complaint, Stevie Kline alleges the following. Canam Steel operates a steel facility in Washington, Missouri. Doc. 11 at ¶ 4. In April 2023, Canam Steel employed mostly males, including Josh Summers, but it also employed some females, including Kline and Amy Smith. *Id.* at ¶¶ 5–7, 12–15.

Around "April 2023, [Kline], as well as other female employees, discovered a camera hidden in the women's locker room." *Id.* at ¶ 15. Smith and Summers had installed the camera,

positioning it to point directly at the women's shower. *Id.* at ¶¶ 16, 20. The camera "was a 'trail camera'" that hunters use. *Id.* at ¶ 18. As such, the camera had a motion sensor, which activated the camera's filming and still-shot functions when a woman moved in the locker room. *Id.* at ¶ 19. The videos and pictures were sent directly to Summers's phone, and Summers later showed them to "many male union members at union meetings." *Id.* at ¶¶ 21, 23. While the camera was present in the locker room, Kline changed her clothes and took showers. *Id.* at ¶ 22.

Upon discovering the camera, Kline and other female employees reported the camera to management. *Id.* at ¶ 24. Management did not discipline anyone "for placing the camera in the women's locker room" or for "showing the videos and pictures to other people." *Id.* at ¶ 25.

**B.      Procedural background**

Kline filed this case in state court and Canam Steel removed it to this Court. Doc. 1. In her complaint, Kline alleges that Canam Steel violated the Missouri Human Rights Act by (1) engaging in sex discrimination, doc. 11 at ¶¶ 1, 33–38, (2) subjecting Kline to a hostile work environment, *id.* at ¶¶ 1, 39–48, and (3) retaliating against Kline after she opposed the sex discrimination, *id.* at ¶¶ 1, 49–55. Kline also alleges that Summers and Smith intentionally inflicted emotional distress, *id.* at ¶¶ 56–61, and intruded upon Kline's expectation of privacy, *id.* at ¶¶ 62–69. Finally, Kline alleges that Summers publicly disclosed embarrassing facts about Kline. *Id.* at ¶¶ 70–79. Kline now moves to remand this case to state court, claiming that Canam Steel improperly removed it based on the fraudulent-joinder doctrine. Doc. 17.

**II.     Standard**

A defendant may remove to federal court any state-court civil action over which the federal court could exercise original jurisdiction, 28 U.S.C.§ 1441(a), including "all civil actions where the matter in controversy exceeds" $75,000, exclusive of interest and costs, and is

2

between "citizens of different States," 28 U.S.C. § 1332(a)(1). A "plaintiff cannot defeat a defendant's 'right of removal' by fraudulently joining a defendant who has 'no real connection with the controversy.'" *Knudson v. Sys. Painters, Inc.*, 634 F.3d 968, 976 (8th Cir. 2011) (first quoting *Chesapeake & Ohio Ry. Co. v. Cockrell*, 232 U.S. 146, 152 (1914); and then citing *Simpson v. Thomure*, 484 F.3d 1081, 1083 (8th Cir. 2007)).

To prove fraudulent joinder, a defendant must show that the plaintiff's claim against the relevant defendant "has 'no reasonable basis in fact and law.'" *Id.* at 977 (quoting *Filla v. Norfolk S. Ry. Co.*, 336 F.3d 806, 810 (8th Cir. 2003)). In other words, "if it is *clear* under governing state law that the complaint does not state a cause of action against the non-diverse defendant, the joinder is fraudulent." *Id.* at 980 (quoting *Filla*, 336 F.3d at 810). On the other hand, "joinder is not fraudulent where 'there is arguably a reasonable basis for predicting that the state law might impose liability based upon the facts involved.'" *Id.* (quoting *Filla*, 336 F.3d at 811).

This standard "require[s] the defendant to do more than merely prove that the plaintiff's claim should be dismissed pursuant to a Rule 12(b)(6) motion." *Id*. (citation omitted). "[I]f there is a 'colorable' cause of action—that is, if the state law *might* impose liability on the resident defendant under the facts alleged—then there is no fraudulent joinder." *Filla*, 336 F.3d at 810 (citation omitted). The Court resolves "all facts and ambiguities in the current controlling substantive law in the plaintiff's favor," *id.* at 811 (citing *Fields v. Pool Offshore, Inc.*, 182 F.3d 353, 357 (5th Cir. 1999)), and if the sufficiency of the complaint is questionable, the "better practice" is "to remand the case and leave the question for the state courts," *id.* (quoting *Iowa Pub. Serv. Co. v. Med. Bow Coal Co.*, 556 F.2d 400, 406 (8th Cir. 1977)).

3

**III.    Discussion**

    **A.    Motion to remand**

Kline and Canam Steel are citizens of different states and the amount in controversy in this case exceeds $75,000 exclusive of interest and costs. Doc. 11 at ¶ 2, 33–79; doc. 1 at ¶¶ 37–41; doc. 1-2 at ¶¶ 45. Accordingly, if Kline fraudulently joined Summers and Smith, as Canam Steel asserts, the Court has subject-matter jurisdiction under section 1332(a)(1), and the Court must dismiss Kline's claims against Summers and Smith. *See Johnson v. Midwest Division - RBH, LLC*, 88 F.4th 731, 736 (8th Cir. 2023). But if the Court concludes that fraudulent joinder did not occur, the Court must remand this case to state court for lack of subject-matter jurisdiction because Summers and Smith are citizens of the same state (Missouri) as Kline. Doc. 11 at ¶¶ 2, 6–7; 28 U.S.C. § 1332(a)(1); 28 U.S.C. § 1447(c).

Canam Steel believes that Kline fraudulently joined Summers and Smith. Doc. 1 at ¶¶ 28–36. In its view, no reasonable basis exists to conclude that Missouri might impose liability on Summers, Smith, and the Doe defendants because the Missouri Human Rights Act preempts Kline's claims against Summers and Smith. *Id.* at ¶¶ 30–36. Kline, on the other hand, argues that the Missouri Human Rights Act does not preempt her intentional-infliction-of-emotional-distress and invasion-of-privacy claims because she has pleaded these claims in the alternative to her Missouri Human Rights Act claims. Doc. 18 at 10–11.[1] Further, she claims that the Missouri Human Rights Act does not preempt her invasion-of-privacy claim because she premised that claim on entirely different facts than her Missouri Human Rights Act claims. *Id.* at 11–13.

The Missouri Human Rights Act states in part:

---

[1] The Court cites to page numbers as assigned by CM/ECF.

> It shall be an unlawful discriminatory practice for an employer, employment agency, labor organization, or place of public accommodation:
>
> (1) To aid, abet, incite, compel, or coerce the commission of acts prohibited under this chapter or to attempt to do so;
>
> (2) To retaliate or discriminate in any manner against any other person because such person has opposed any practice prohibited by this chapter or because such person has filed a complaint, testified, assisted, or participated in any manner in any investigation, proceeding or hearing conducted pursuant to this chapter;
>
> (3) For the state or any political subdivision of this state to discriminate on the basis of race, color, religion, national origin, sex, ancestry, age, as it relates to employment, disability, or familial status as it relates to housing; or
>
> (4) To discriminate in any manner against any other person because of such person's association with any person protected by this chapter.

Mo. Rev. Stat. § 213.070.1.  In 2017, Missouri made several amendments to this statute and the applicable definitions statute, Missouri Revised Statute 213.010.  For example, Missouri made section 213.070, and two other statutes, "the exclusive remedy for any and all claims for injury or damages arising out of an employment relationship."  Mo. Rev. Stat. § 213.070.2.  In other words, section 213.070.2 preempts any and all claims for injury or damages that arise out of an employment relationship.

Thus, the fraudulent-joinder analysis raises the question of whether "there is arguably a reasonable basis for predicting that" section 213.070.2 does *not* preempt Kline's claims against Summers and Smith.  *Knudson*, 634 F.3d at 980 (quoting *Filla*, 336 F.3d at 811).  The Court finds that a reasonable basis does exist.

The Missouri Humans Right Act does not define any of the operative terms that make up the exclusive-remedy provision.  *See* Mo. Rev. Stat. § 213.010.  And neither Kline nor Canam Steel has identified any caselaw that interprets or applies it.  *See* docs. 17–18, 23, 25.  Nor has

5

the Court, in its independent research, found any. The absence of guidance from Missouri state courts leaves the Court with several lingering questions about the scope of the exclusive-remedy provision and how it applies here, particularly to Kline's invasion-of-privacy claim.

First, Kline premises her invasion-of-privacy claim, in part, on facts that occurred while Summers was at union meetings, i.e., away from Canam Steel's facility. Doc. 11 at ¶¶ 23, 71. Allegedly, Summers's camera captured photos and videos of Kline while she was in the locker room at Canam Steel, and Summers showed those pictures and videos, which were on his phone, to union members at the union meeting. *Id.* at ¶¶ 21, 23, 71. These alleged facts imply that the relevant conduct arises partially from, if not wholly from, an employment relationship. Does section 213.070.2 preempt claims that arise partially from an employment relationship, or does it preempt only claims that arise wholly from an employment relationship?

Second, the alleged facts suggest that Summers obtained and published the photos and videos in part for his and others' personal gratification. *See id.* at ¶ 4 (alleging that Canam Steel operates a steel facility—an operation that Summers's actions did not further). Does a claim "aris[e] out of an employment relationship" when the conduct giving rise to it was for personal gratification, not work purposes? And, relatedly, does the fact that the alleged wrongdoer acted in his personal capacity render a claim outside of the scope of the exclusive-remedy provision?

Third, the facts and questions discussed above beget the question of from whose "employment relationship" must a claim arise—the claimant's (e.g., Kline's employment relationship with Canam Steel), the alleged wrongdoer's (e.g., Summers's employment relationship with Canam Steel), or either? *See, e.g.*, *Alst v. Mo. CVS Pharmacy, LLC*, No. 4:20-cv-00155-NKL, 2020 WL 2319882, at *2 (W.D. Mo. May 11, 2020) (remanding the case because the plaintiff alleged that the conduct occurred "outside and beyond the scope of *her*

6

employment" (emphasis added)); *Matthews v. Syncreon.US, Inc.*, No. 20-CV-6140-SRB, 2020 WL 6538332, at *3 (W.D. Mo. Nov. 6, 2020) (remanding a case where the plaintiff alleged, in the alternative, that the individual defendant was acting outside the scope of *his* employment relationship with the employer defendant when he assaulted and battered the plaintiff); *Johnson*, 88 F.4th at 735–36 (affirming the denial of a remand motion because the plaintiff had pleaded that the person who conducted the relevant conduct "was 'acting within the course and scope of her employment,'" not the plaintiff's employment, with the employer defendant).

A Missouri state court might reasonably answer each of these lingering questions in favor of either Kline or Canam Steel, and this federal Court need not, and should not, definitively resolve these questions. *Filla*, 336 F.3d at 811. Instead, Missouri state courts should have the first opportunity to determine these important issues of state law. Thus, for purposes of this motion, the Court resolves these lingering questions in favor of Kline and in favor of remand. *Id*.

### B. Motion to file a sur-reply

Canam Steel moves to file a sur-reply regarding Kline's motion to remand. Doc. 26. Federal courts have the discretion to allow a party to file a sur-reply if justice so requires, but courts largely disfavor sur-replies. *E.g.*, *Johnson v. City of Leadington*, Case No. 4:19-cv-02282-SEP, 2022 WL 179218, at *10 (E.D. Mo. Jan. 20, 2022). Upon review of its motion and Kline's briefing, the Court finds that Canam Steel has failed to identify any consideration that justifies filing a sur-reply. The Court therefore denies Canam Steel's motion for leave to file a sur-reply.

## IV. Conclusion

For the reasons explained above, the Court grants Kline's [17] Motion to Remand and denies Canam Steel's [26] Motion for Leave to File Sur-Reply in Further Opposition to Plaintiff's Motion to Remand. Further, the Court denies as moot Defendants' [9] Joint Motion to

7

Dismiss.  Pursuant to section 1447(c), the Court remands this case to the Circuit Court of the City of St. Louis, Missouri, and directs the Clerk of Court to mail a certified copy of this order of remand to the clerk of the state court.  A separate order of remand accompanies this memorandum and order.

So ordered this 4th day of December 2024.

*SLR. CR*

STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE